UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-23976-CIV-ALTMAN

**IAN LAMBERT**,

    *Petitioner*,

v.

**MERRICK B. GARLAND,
U.S. ATTORNEY GENERAL**, *et al.*,

    *Respondents*.

_____/

## ORDER

Ian Lambert, a "native and citizen of Jamaica," has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging his ongoing confinement in the custody of U.S. Immigration and Customs Enforcement ("ICE"). *See* Petition [ECF No. 1] at 2. Lambert avers that his continued detention is presumptively unreasonable under the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See id.* at 1. The Respondents counter that the length of Lambert's detention is directly attributable to Lambert's intentional "actions to obstruct his removal proceedings" and that there's ample evidence that his removal will occur "in the reasonably foreseeable future." Response [ECF No. 9] at 1. After careful review, we **DENY** Lambert's Petition.

### THE FACTS

Although Lambert is a Jamaican citizen, he's been in the United States since June 10, 1994, when he entered Miami International Airport "as a non-immigrant visitor for pleasure." *Id.* at 2; *see also* Crossing History [ECF No. 9-1] at 7. On October 14, 2005, Lambert was convicted in Florida state court under an alias, Dane Ian Dennis, for committing the crimes of (1) lewd and lascivious battery on a child who was 12–16 years of age, and (2) child abuse/impregnating a minor female. *See* Case No. F04-013668 Judgment [ECF No. 9-1] at 9–13. On September 29, 2017, Lambert was

convicted of violating the terms of his sexual-offender probation. *See* F17-017305 Judgment [ECF No. 9-2] at 4–8.

Lambert's legal troubles didn't end there. On June 21, 2019, a federal grand jury indicted him (this time under his real name) for making a false statement in an application for a passport, in violation of 18 U.S.C. § 1542. *See* Indictment, *United States v. Lambert*, No. 19-20381-CR-WILLIAMS (S.D. Fla. June 21, 2019), ECF No. 1 at 1. In that federal case, the Government alleged that Lambert "represented that the social security number ending in -1053 belonged to him, when in truth and in fact, and as the defendant then and there well knew, the social security number ending in -1053 did not belong to him[.]" *Ibid.* Lambert pled guilty to this offense, and U.S. District Judge Kathleen M. Williams sentenced him to ten months in the custody of the Bureau of Prisons. *See* Judgment, *United States v. Lambert*, No. 19-20381-CR-WILLIAMS (S.D. Fla. Oct. 19, 2019), ECF No. 18 at 1.

This federal prosecution got the attention of the immigration authorities. On July 1, 2019, the Department of Homeland Security ("DHS") issued Lambert a "Notice to Appear," which "charg[ed] removability pursuant to Section 237(a)(1)(B) of the Immigration and Nationality Act, as a non-immigrant overstay." Declaration of Deportation Officer Juan H. Martinez ("Martinez Decl.") [ECF No. 9-3] at 3. This initial "Notice to Appear" was superseded by a "Notice of Intent to Issue a Final Administrative Order" on March 10, 2020, which informed Lambert that DHS intended to "issue a final administrative removal order without a hearing before an immigration judge," because he had been convicted of a felony involving the "sexual abuse of a minor." Notice of Intent [ECF No. 9-3] at 15. On April 29, 2020, Lambert was released from the BOP and was immediately "taken into ICE custody in Oakdale, Louisiana." Record of Deportable Alien [ECF No. 9-4] at 4. Lambert was then personally served with the Notice of Intent on May 1, 2020, but he refused to acknowledge receipt. *See* Notice of Intent [ECF No. 9-3] at 16. DHS ordered Lambert's removal from the United States on May 20, 2020. *See* Final Administrative Removal Order [ECF No. 9-4] at 8.

DHS promptly contacted the Jamaican Consulate in Miami, Florida, and "submitted a formal request for a travel document for Petitioner" on May 26, 2020; the consulate interviewed Lambert on June 17, 2020. Martinez Decl. at 3. On June 24, 2020, Lambert was taken off a removal charter light to Jamaica "because the Jamaican consulate did not issue a travel document. . . . [T]he travel document was not issued because the Jamaican consulate requested the Petitioner's medical records." *Id.* at 4. Lambert then "refused to sign a medical records release form" and (instead) "applied for an immigration benefit . . . which halted the removal process until the application was adjudicated on September 3, 2020." *Ibid.* Lambert was released from ICE custody on November 23, 2020, *see ibid.*, after the U.S. District Court for the Central District of California enjoined ICE from holding certain detainees in custody during the COVID-19 pandemic, *see Fraihat v. U.S. Immigr. & Customs Enf't*, 445 F. Supp. 3d 709, 751 (C.D. Cal. 2020) (Bernal, J.), *rev'd*, 16 F.4th 613 (9th Cir. 2021). Lambert was given a GPS monitor and was "instructed to report to the ICE Miramar office on January 25, 2021." Record of Deportable Alien [ECF No. 9-4] at 4; *see also* Order of Release on Recognizance [ECF No. 9-4] at 11–18.

ICE took Lambert back into custody on September 1, 2022. *See* Martinez Decl. at 4. Since then, DHS has twice tried (and failed) to repatriate Lambert back to Jamaica. DHS's first attempt to place Lambert on a charter flight (on October 26, 2022) faltered "because the travel document request packet was incomplete, due to a missing birth certificate." *Ibid.* DHS acquired Lambert's birth certificate and "tentatively nominated Petitioner for removal on November 17, 2022, via charter flight to Jamaica." *Ibid.* Once again, however, the Jamaican consulate required DHS to provide "Petitioner's medical records for travel document issuance." *Id.* at 5. On November 14, 2022, Lambert voluntarily authorized the disclosure of his medical records to the Jamaican consulate. *See* Waiver Authorizing Disclosure to a Third Party [ECF No. 9-4] at 32–33. According to Deportation Officer Juan H.

3

Martinez, "Petitioner's medical records are still pending review by the Jamaican Ministry of Health in order for the consulate to issue a travel document." Martinez Decl. at 5.

## THE LAW

The federal habeas corpus statute, 28 U.S.C. § 2241, "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Cadet v. Bulger*, 377 F.3d 1173, 1181–82 (11th Cir. 2004) (quoting 28 U.S.C § 2241(c)(3)). This provision allows persons to challenge the legality of their "immigration-related detention, including challenges to the validity of a deportation order[.]" *Zadvydas*, 533 U.S. at 687; *see also Cadet*, 377 F.3d at 1182 ("[T]he jurisdiction-stripping provisions of AEDPA and IIRIRA did not deprive federal courts of jurisdiction to consider aliens' challenges to their removal orders raised in § 2241 habeas petitions." (citing *I.N.S. v. St. Cyr*, 533 U.S. 289, 314 (2001))).

Because "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Government must "limit[ ] an alien's post-removal detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689–90. According to the Supreme Court of the United States, "six months is a presumptively reasonable period to detain a removable alien awaiting deportation under such circumstances." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1051 (11th Cir. 2002) (citing *Zadvydas*, 533 U.S. at 701). The Court was quick to point out, though, that this six-month period is just a guidepost and that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. "Therefore, in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale*, 287 F.3d at 1052. The Government then has the right to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

4

**ANALYSIS**

The dispute between Lambert and the Respondents is simple. Lambert believes that "ICE currently has no plan or ability to execute Mr. Lambert's removal order to Jamaica. The status of [his] travel document is unknown and from conversations with the Jamaican Embassy [is] highly unlikely to be provided." Petition at 2. Therefore, Lambert asserts, his current detention is unconstitutional because his "removal is not substantially likely in the reasonably foreseeable future." *Id.* at 1. The Respondents, by contrast, insist that Lambert's removal from the United States is highly likely because "Petitioner's native country, Jamaica, is accepting individuals removed from the United States and flights are being regularly scheduled to Jamaica." Response at 10 (citing Martinez Decl. at 5). The Respondents also allege that at least some of the delay is attributable to Lambert himself. *See id.* at 7 ("Petitioner has acted to obstruct his repatriation to Jamaica since he became subject to a final order of removal on May 20, 2020."). We agree with the Respondents on both points.

*First*, Lambert can't use his own recalcitrance to argue that his time in custody has been unreasonably extended. Lambert has been in ICE custody for two stretches of time: from April 29, 2020, until November 23, 2020, and then again from September 1, 2022, until now. *See* Record of Deportable Alien [ECF No. 9-4] at 4. During these stretches, DHS scheduled Lambert's removal on three different charter flights—June 24, 2020, October 25, 2022, and November 17, 2022. *See* Martinez Decl. at 3–5. But Lambert never got on these flights because the Jamaican government wouldn't issue him a travel document without first reviewing his medical records. *See id.* at 4 (explaining that Lambert was taken off the June 24, 2020 charter flight "because the Jamaican consulate did not issue a travel document. . . . [T]he travel document was not issued because the Jamaican consulate requested the Petitioner's medical records."); *id.* at 5 ("On November 14, 2022, ERO Miami spoke with an official from the Jamaican consulate, who requested Petitioner's medical records for travel document issuance."). And the fact is that the Jamaican government didn't have his medical records because

5

Lambert refused to consent to their release until November 14, 2022. *See id.* at 4 ("On July 17, 2020, the Petitioner refused to sign a medical records release form[.]"); Waiver Authorizing Disclosure to a Third Party [ECF No. 9-4] at 32–33 (signed on November 14, 2022).

Courts in this Circuit have consistently held that, when a habeas petitioner "is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with DHS[.]" *Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015); *see also, e.g.*, *Oladokun v. U.S. Att'y Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) ("Oladokun's non-cooperation is the only barrier to his removal. The Department could have removed Oladokun to Nigeria, but for his misconduct at the airport."); *Vandi v. Ripa*, 2022 WL 2709109, at *2 (S.D. Fla. June 3, 2022) (Ruiz, J.) ("Petitioner's own actions—accusing an ICE officer of misconduct while boarding his flight back to Sierra Leone—have caused the delay in his repatriation; therefore, Petitioner has failed to show that the Government itself is incapable of effectuating his removal from the United States.").

Indeed, Lambert's case is on all-fours with two other cases from our District—both of which involved Jamaican nationals who refused to provide appropriate documentation to DHS. In *Drummond v. Holder*, a petitioner's "failure to cooperate with the Jamaican government's request for information"—which resulted in an eight-month delay—didn't support the petitioner's claim that his removal wasn't "reasonably foreseeable." 2015 WL 5092803, at *2 (S.D. Fla. Aug. 3, 2015) (White, Mag. J.), *report and recommendation adopted*, 2015 WL 5084138 (S.D. Fla. Aug. 28, 2015) (Gayles, J.). Likewise, in *Davis v. Rhoden*, the court found that "the delay in effectuating Petitioner's removal was not presumptively unreasonable" because the petitioner there "declined to participate in good faith efforts to remove him by not revealing his birthname, native country, or birthdate." 2019 WL 2290654, at *7 (S.D. Fla. Feb. 26, 2019) (Reid, Mag. J,), *report and recommendation adopted*, 2019 WL 2289624 (S.D. Fla. May 29, 2019) (Scola, J.).

Here, too, the Respondents couldn't remove Lambert before November 14, 2022, because Lambert refused to consent to the release of his medical records. The Respondents, recall, tried to remove Lambert several times—each time without success because Lambert refused to provide the medical documentation the Jamaican government needed to issue his travel documents. *See Davis*, 2019 WL 2290654, at *7 ("Petitioner has consistently delayed the removal process. The record further reflects that ICE is not at fault for any delay. ICE obtained travel documents three times. Although those tentative removal plans had to be cancelled, those cancelled plans were at the request of Jamaican officials and were, in fact, attributable to Petitioner's conduct."). Since Lambert only began cooperating[1] with the Respondents on November 14, 2022, the length of his detention (for *Zadvydas* purposes) was tolled until that day. *See Guo Xing Song v. U.S. Att'y Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013) ("The six-month period [under *Zadvydas*] is tolled, however, if the alien acts to prevent his removal."). Accordingly, Lambert's detention remains within the "presumptively reasonable period to detain a removable alien awaiting deportation" because less than six months have passed since November 14, 2022. *Akinwale*, 287 F.3d at 1052.

*Second*, Lambert failed to prove that his removal isn't reasonably foreseeable. The only evidence Lambert has adduced on this issue are his own conclusory proclamations that "ICE currently has no plan or ability to execute Mr. Lambert's removal order to Jamaica," that the "status of [his] travel document is unknown," and that ICE "has not been able to execute a removal flight to Jamaica for Mr. Lambert since October of 2020." Petition at 2. All of this has been contradicted by the Respondents' evidence. Deportation Officer Martinez's declaration establishes that the Respondents have been in frequent contact with the Jamaican government and that Lambert can be removed once

---

[1] We use the term "cooperating" very loosely. It's true that Lambert has now consented to the release of his medical records. *See* Waiver Authorizing Disclosure to a Third Party [ECF No. 9-4] at 32–33. But he still appears to be trying to delay his removal. He, for instance, has sometimes refused to acknowledge the receipt of documents pertaining to his removal proceedings. *See, e.g.*, Decision to Continue Detention [ECF No. 9-4] at 27 (showing Lambert "refused to sign" on November 30, 2022).

his medical records are "review[ed] by the Jamaican Ministry of Health in order for the consulate to issue a travel document." Martinez Decl. at 5. Officer Martinez also confirms that "Jamaica is accepting individuals removed from the United States," that "flights are regularly being scheduled to Jamaica," and that "Jamaica routinely issues travel documents." *Ibid.*

We reiterate, too, that the Respondents have repeatedly tried to remove Lambert via charter flight, and that all such attempts have been derailed by Lambert's failure to release his medical records. In short, the representations of Officer Martinez are sufficient to establish that there's a "significant likelihood of [Lambert's] removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701; *see also, e.g.*, *Drummond*, 2015 WL 5092803, at *2 ("From a review of the record, it is apparent that ICE promptly took the necessary steps to secure travel documents upon the entry of a final order of removal. Moreover, ICE has been in communications with the Jamaican government, which at no time has indicated that a travel document may not be forthcoming.").

We therefore **ORDER AND ADJUDGE** that Lambert's Petition for Writ of Habeas Corpus is **DENIED without prejudice**. All pending motions are **DENIED as moot**. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida, on February 15, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: Ian Lambert, *pro se*
counsel of record